O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| AARON RUBENSTEIN,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID E. SMITH; MMB HOLDINGS LLC; MOJOBEAR CAPITAL LLC; INDIEPUB ENTERTAINMENT, INC.,<br><br>    Defendants. | Case No. 2:14-cv-09107-ODW (JC)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [34]** |

## I.   INTRODUCTION

Defendants David E. Smith, MMB Holdings LLC, and Mojobear Capital LLC (collectively "Defendants") move to dismiss the Complaint for lack of subject matter jurisdiction.  In the alternative, Defendants move to dismiss the Complaint for failure to join an indispensable party.  For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss.  (ECF No. 34.)

## II.   FACTUAL BACKGROUND

This is an action to recover short-swing profits under Section 16(b) of the Securities Exchange Act.  Plaintiff Aaron Rubenstein, who owns one share of stock in indiePub Entertainment, Inc. ("indiePub"), alleges that Defendants Mojobear Capital LLC ("Mojobear"), MMB Holdings LLC ("MMB"), and David E. Smith profited

from short-swing trades of indiePub stock between 2012 and 2013. (Opp'n, Aff. Tauber ¶ 2, Ex. A; Compl. ¶¶ 2, 4, 17, 23–24.) Smith is a member of Mojobear. Mojobear, in turn, is the managing member of MMB. (Mot., Decl. Smith ¶ 2.)

On March 9, 2012, MMB entered into a loan agreement with indiePub. (*Id.* ¶ 3, Ex. A.) The agreement provided that MMB would make future loans to indiePub in exchange for an option or warrant to purchase shares of indiePub's common stock over a defined period and at a defined price. (*Id.*) It also gave MMB a security interest in all of indiePub's property, including all "choses in action" then-owned or later-acquired by indiePub, as collateral in the event of default. (*Id.*)

Between March 2012 and May 2013, MMB loaned indiePub (and several related entities) approximately $7.7 million. (Decl. Smith ¶¶ 6–8.) By October 2013, indiePub had defaulted on the loans. (Mot., Decl. Schaaf ¶¶ 12–13, Ex. B; Decl. Smith ¶¶ 9–10, Ex. C.) On December 3, 2013, after indiePub's directors realized that it would be unable to repay the loan, indiePub agreed to "voluntarily surrender and transfer the Collateral to [MMB] upon [MMB]'s demand." (Decl. Smith ¶ 10, Decl. Schaaf ¶¶ 13–14, Ex. C.) Although it is unclear when or even if any formal "demand" was made, both Ray Schaaf—an indiePub director and its CEO at the time—and David Smith declare that all such collateral, including all choses in action, was in fact transferred to MMB thereafter. (Decl. Schaaf ¶ 15; Decl. Smith ¶ 11.) On December 20, 2013, MMB sold its interest in the collateral to Apostrophe Apps, LLC ("Apostrophe"), a company created by Smith for the sole purpose of purchasing this collateral. (Decl. Smith ¶ 11, Ex. D.)

On December 23, 2013, indiePub terminated all of its employees. (Decl. Schaaf ¶ 16.) All of indiePub's directors resigned by December 31, 2013, with the exception of Schaaf. (*Id.*) Schaaf stayed on as a director through January 2014 in order to wind down the company, after which he too resigned. (*Id.* ¶ 17.) indiePub currently has "no employees, no directors, no officers, no assets, no office space, no bank accounts, and no mailing address." (*Id.*) Moreover, indiePub's corporate status

in Delaware is "no longer in existence and good standing . . . having become inoperative, and void" for failure to pay taxes. (Mot., Decl. May ¶ 2, Ex. F.)

On November 25, 2014, Plaintiff filed this lawsuit on behalf of indiePub. (ECF No. 1.) On January 28, 2015, Defendants filed a Rule 12(b)(6) motion on various grounds. (ECF No. 18.) The Court denied that Motion. (ECF No. 25.) On July 20, 2015, Defendants filed the instant Motion. (ECF No. 34.) Plaintiff filed a timely Opposition, and Defendants a timely Reply. (ECF Nos. 36, 39.) Plaintiff also filed a timely Request to Cross-Examine Declarants pursuant to Local Rule 7-8, which the Court granted as to declarant David E. Smith.[1] (ECF No. 42.) Both parties were given an opportunity to examine Smith at the hearing on this Motion. (ECF No. 43.) Defendants' Motion is now before the Court for consideration.

### III.   LEGAL STANDARD

A party may move at any time to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3).[2] "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The court "need not presume the truthfulness of the plaintiffs' allegations," *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and may "resolve factual disputes concerning the

---

[1] The Court denied Plaintiff's request to examine declarants Ray Schaaf and C. David Lee. Schaaf, who is a resident of Nevada, is beyond the subpoena power of the Court. Fed. R. Civ. Proc. 45(c). It was also unnecessary for Lee to submit to cross-examination as the Court does not rely on his declaration. *See* C.D. Cal. L.R. 7-8.

[2] Contrary to Plaintiff's assertion, a defendant can still bring such a motion even after filing a prior Rule 12(b)(6) motion. *See Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983).

existence of jurisdiction," *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 (9th Cir. 2003).

Lack of Article III standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White*, 227 F.3d at 1242. "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and some quotation marks omitted).

## IV. DISCUSSION

Defendants contend that Plaintiff lacks Article III standing because he does not own shares in Apostrophe—the company with the exclusive right to recover the short-swing profits allegedly earned by Defendants. (Mot. at 5–11.) Plaintiff counters on three main grounds. First, Plaintiff argues that Section 16(b) claims cannot be assigned by contract as a matter of law, particularly to the very insider against whom the claims are brought. (Opp'n at 15–18.) Second, Plaintiff argues that shareholder standing under Section 16(b) is direct, not derivative, and thus he still has a right to bring the claim even if indiePub's right to bring the claim was assigned. (Opp'n at 13–15, 18–19.) Third, Plaintiff argues that the Court cannot determine at this time whether or not indiePub properly transfer the claim to MMB. (Opp'n at 23–25.) The Court disagrees with Plaintiff on each issue.[3]

---

[3] Because the Court determines that it lacks subject matter jurisdiction over Plaintiff's claims, the Court need not—indeed, cannot—reach Defendants' remaining arguments.

### A. Assignability of Section 16(b) Claims

The parties do not cite, and the Court cannot find, any binding precedent addressing whether or not a corporation may assign a Section 16(b) claim by contract to another corporation. However, Defendants cite to cases in the Ninth Circuit and Eighth Circuit holding that a corporation's Section 16(b) claims can be transferred by operation of state law as a result of a corporate merger, and argue that transferring such claims by contract are no different. (Mot. at 7–9.)

In *Lewis v. McAdam*, 762 F.2d 800 (9th Cir. 1985) (per curiam), the Ninth Circuit addressed "whether the right to initiate a section 16(b) action against the director of a corporation survives if the corporation is extinguished by merger." *Id.* at 802. There, the relevant state law provided that after a merger, all property—including all causes of action—of each of the constituent corporations vests in the surviving corporation. *Id.* As a result, the court held that "the surviving corporation[] was vested with the rights to initiate a section 16(b) action against [the insider] as a matter of law." *Id.* at 803. In *W. Auto Supply Co. v. Gamble-Skogmo, Inc.*, 348 F.2d 736 (8th Cir. 1965), the Eighth Circuit not only also held that a Section 16(b) claim vested in the surviving corporation after a corporate merger, but further held that the surviving corporation's subsequent assignment of those same Section 16(b) claims to another corporation was valid. *Id.* at 741.

The Court agrees with Defendants that there is no material difference between the transfer of a Section 16(b) claim by merger and a transfer of such claims by contract. Indeed, at common law, the test for assignability of a tort claim and survivability of a tort claim were identical. *Fifield Manor v. Finston*, 54 Cal. 2d 632, 638 (1960) ("Historically at common law the assignability of causes of action sounding in tort depended upon survivability."); *Fed. Sav. & Loan Ins. Corp. v. Fielding*, 316 F. Supp. 82, 84 (D. Nev. 1970); 6A C.J.S. *Assignments* § 50 ("[S]urvival is the traditional test of assignability of a tort claim."). Thus, if a Section 16(b) claim survives a corporate merger, there is no reason why it cannot be assigned to another

corporation.  The Court also finds persuasive the Eight Circuit's determination that assignments of such claims are valid, *W. Auto Supply Co.*, 348 F.2d at 741, including the fact that the court did not identify any distinction between transfers by merger and transfers by assignment despite addressing both issues. *Id.*

Plaintiff's concern that such assignments will allow insiders to insulate themselves against insider trading liability is grossly overstated, at least in the context of this case.  First, indiePub's interests were (at least theoretically) safeguarded by indiePub's directors, who owed a fiduciary duty to the corporation not to take action (such as entering into contracts) that was not in the best interest of indiePub. *See, e.g.*, *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1047 (N.D. Cal. 2009).  Second, there is no evidence that MMB was attempting to insulate itself from insider trading liability.  It is simply not believable that MMB agreed to loan $7.7 million to indiePub in the hope that indiePub would default on the loans so that MMB might secure the rights to Section 16(b) claims that did not even exist at that point.  Finally, Defendants' Section 16(b) liability has not been "erased or forgiven" as Plaintiff suggests—the right to sue and recover on such claims has simply been transferred to someone else.  In sum, although there conceivably are situations where an insider may attempt to insulate themselves from Section 16(b) liability through assignment of such claims, this is clearly not one of them.

**B.     Plaintiff's Article III Standing After Assignment**

Defendants argue that because Plaintiff's Article III standing is derivative of indiePub's standing, Plaintiff has no standing after indiePub transferred the claim. (Mot. at 12–13; Reply at 4–6.)  Plaintiff counters that his standing is direct, not derivative, and thus he maintains standing to pursue a Section 16(b) claim even if indiePub does not. (Opp'n at 18–19.)  Defendants are correct.

A claim under Section 16(b) may be brought "by the owner of any security of the issuer in the name and in behalf of the issuer." 15 U.S.C. § 78p(b).  The security holder's "indirect interest [in such a lawsuit, which is] derived through one share of

stock[,] is enough to confer standing [under Article III], however slight the potential marginal increase in the value of the share." *Gollust v. Mendell*, 501 U.S. 115, 127 (1991). Indeed, even an owner of stock in a *parent* company has a sufficient financial interest under Article III to maintain a Section 16(b) claim against insiders trading on the subsidiary company's stock. *Id.* However, "if a security holder were allowed to maintain a § 16(b) action after he had lost *any* financial interest in its outcome, there would be serious constitutional doubt whether that plaintiff could demonstrate the standing required by Article III's case-or-controversy limitation on federal court jurisdiction." *Id.* at 125 (emphasis added).

Here, Plaintiff clearly does not have any financial interest in the outcome of this case. The right to pursue and recover on Section 16(b) claims against Defendants was transferred first from indiePub to MMB,[4] then from MMB to Apostrophe. Plaintiff does not own any security in either MMB or Apostrophe, and there is no evidence that indiePub has any connection to either company through which Plaintiff could claim a financial interest in this action. Plaintiff therefore lacks standing under Article III to maintain this action.

The cases cited by Plaintiff holding that a shareholder has a "direct" right to bring a Section 16(b) claim in the event the corporation declines to do so, *In re XO Commc'ns, Inc.*, 330 B.R. 394, 427–31 (Bankr. S.D.N.Y. 2005); *Schaffer ex rel. Lasersight, Inc. v. CC Investments, LDC*, 286 F. Supp. 2d 279, 282 (S.D.N.Y. 2003), are beside the point. The *harm* to the shareholder is still derived from the harm to the

---

[4] Because indiePub made a full, unequivocal, and complete assignment of both legal and equitable title in its Section 16(b) claims to MMB (*see infra* Part IV.C), indiePub no longer has standing to sue or recover on such claims. *See, e.g.*, *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 897 (C.D. Cal. 2012) ("Once a claim has been assigned, . . . the assignee is the owner and the assignor generally lacks standing to sue on it."); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor."); *Swiss Bank Corp. v. Dresser Indus., Inc.*, 944 F. Supp. 671, 673 (N.D. Ill. 1996); *Borkowski v. Fraternal Order of Police, Philadelphia Lodge No. 5*, 155 F.R.D. 105, 112 (E.D. Pa. 1994); 6A C.J.S. *Assignments* § 124.

1 corporation. *Gollust*, 501 U.S. at 127 ("A security holder [has] no direct financial
2 interest in the outcome of the litigation, since any recovery will inure only to the
3 issuer's benefit."). Without any financial interest in the harmed corporation, Plaintiff
4 has no financial interest in the outcome of the case. This precludes Plaintiff from
5 maintaining this action regardless of his "direct" right to file suit.

### C. indiePub's Assignment of Section 16(b) Claims to MMB

The Court rejects Plaintiff's argument that the Court cannot determine on this Motion whether or not indiePub in fact assigned its Section 16(b) claims to MMB. Defendants have submitted more than sufficient evidence showing that such an assignment was made. The original loan agreement provided that MMB would obtain a security interest in *all* of indiePub's property, including all "choses in action" and "commercial tort claims" (then-existing or later-acquired) and all "Proceeds" arising from such claims. (Decl. Smith ¶ 4, Decl. Schaaf, ¶ 7, Ex. A at 4, 7, 16–17.) The subsequent transfer agreement provided that indiePub would "surrender and transfer the Collateral to [MMB] upon [MMB]'s demand." (Decl. Smith ¶ 11, Decl. Schaaf, ¶ 14, Ex. C.)[5] Although Defendants do not expressly state that a demand was made, the Court can reasonably infer that one was made given that both indiePub's former CEO and MMB's managing member declare that all such assets were transferred to MMB. (Decl. Schaaf ¶ 15; Decl. Smith ¶ 11.) Plaintiff does not present any evidence that contradicts Defendants' evidence. Thus, the Court finds that indiePub fully, unequivocally, and completely assigned its Section 16(b) claims to MMB.[6]

Plaintiff advances two reasons why the Court should not make this finding, neither of which is persuasive. First, Plaintiff argues that the facts relating to standing

---

[5] "Collateral," in turn, is defined as the "security interests and liens in all [of indiePub's] assets" that MMB acquired "as security for repayment of the Obligations." (Decl. Smith ¶ 11, Decl. Schaaf, ¶ 14, Ex. C.) The Court finds it immaterial that the agreement did not attach a list of such assets to the transfer agreement.

[6] While the subsequent transfer to Apostrophe also appears proper, the Court need not decide that issue. That indiePub properly assigned its claim to MMB (and thus could no longer bring or recover on the claim) is all that is necessary to resolve this Motion.

also go to the merits of the claim, and thus standing cannot be resolved on a Rule 12(b)(1) motion. While fact-finding on a Rule 12(b)(1) motion is inappropriate where disputed "jurisdictional facts are . . . intertwined with the merits," *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987), there are no *disputed* facts here. Plaintiff does not present any evidence that contradicts Defendants' evidence. Thus, even if the Court employed a summary judgment standard in evaluating the facts underlying the jurisdictional issue, *see id.*, Defendants would still prevail. Moreover, the question of standing generally "precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,* 548 F.3d 1184, 1189 n.10 (9th Cir.2008)); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975). As Plaintiff notes, Section 16(b) is a strict liability scheme that requires disgorgement of all short-swing profits regardless of motive or actual abuse of inside information. *Roth v. Reyes*, 567 F.3d 1077, 1079 (9th Cir. 2009). Thus, the only factual issues going to the merits are whether or not Defendants actually traded indiePub stock within a six month period. This has nothing to do with the validity of the assignment of claims from indiePub to MMB. For these reasons, resolution of standing is appropriate on this Motion.

Next, Plaintiff raises a host of factual issues that Defendants did not address, and argues that he should be given further opportunity develop these facts. This argument is a red-herring. For example, although Plaintiff states that "Defendants do not provide crucial information about any of the loans they reference, such as the dates, amount loaned, and number of shares covered by any warrants issued in connection with the loans," (opp'n at 24), Plaintiff does not say—and the Court cannot discern—how these issues even remotely relate to jurisdiction, let alone warrant denying the Motion. Moreover, Plaintiff has had adequate opportunity to investigate and develop these facts during the ten months that this case has been pending, including during the cross-examination of Smith at the hearing on this Motion. Thus, the Court sees no reason to delay resolution of Plaintiff's standing in

this action, particularly as it goes to the Court's subject matter jurisdiction.

## V. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendants' Motion to Dismiss. (ECF No. 34.) The Court dismisses the action with prejudice, and the Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

September 16, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**